UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

QUINSHARA COLVIN,

                                        Plaintiff,

        v.                                                              **DECISION AND ORDER**
                                                                        09-CV-946S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.


        1.      Plaintiff Quinshara Colvin challenges an Administrative Law Judge's ("ALJ")

determination that she is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that she has been disabled since January 4, 1997, due to knee

problems.  Plaintiff contends that this impairment renders her unable to work, and therefore

asserts that she is entitled to payment of Supplemental Security Income ("SSI") under the

Act.

        2.      Plaintiff filed an application for SSI payments and Childhood Disability

Benefits on June 14, 2000.  Her application was initially denied, after which she timely filed

a request for a hearing.  Pursuant to that request, administrative hearings were held on

June 14 and August 19, 2002, but were then postponed to allow Plaintiff to retain counsel.

Plaintiff did not do so, however, and on January 27, 2003, ALJ Marilyn D. Zahn held a

hearing at which Plaintiff appeared without counsel and testified.  The ALJ considered the

case *de novo*, and on February 21, 2003, issued a decision denying Plaintiff's application

for benefits.  Plaintiff filed a request for review with the Appeals Council which, on March

4, 2004, remanded the case for further administrative hearings.  ALJ Zahn held another

administrative hearing on May 23, 2005.  Plaintiff appeared with counsel and testified.  ALJ

Zahn considered the case *de novo* and issued another unfavorable decision on May 4,

2006.  On February 27, 2008, the Appeals Council denied Plaintiff's request for review.

Plaintiff filed the current civil action on November 3, 2009, challenging Defendant's final

decision.[1]

3.    On June 18, 2010, the Commissioner filed a Motion for Judgment on the

Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Briefing of the

motion concluded on September 9, 2010, at which time this Court took the motion under

advisement without oral argument.  For the reasons set forth below, the Commissioner's

motion is granted.

4.    A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y

of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

determination will be reversed only if it is not supported by substantial evidence or there

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to

"more than a mere scintilla," and it has been defined as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where

evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60,

62 (2d Cir. 1982).

5.    "To determine on appeal whether the ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

---

[1]The ALJ's May 4, 2006 decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the

[Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in any substantial gainful activity since the alleged onset of the disability (R. at 40);[2] (2) Plaintiff's knee disorder is considered a "severe" impairment within the meaning of the Act (Id.); (3) Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Id.); (4) Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR § 416.967(a) (Id.); and (5) Although Plaintiff has no past relevant work under 20 CFR §§ 404.1564 and 416.965, considering Plaintiff's status as a younger individual, limited

---

[2] Citations to the underlying administrative record are designated as "R."

education, work experience, and residual functional capacity, the ALJ determined that Medical-Vocational Rule 201.24 directs a finding of "not disabled." (Id.) Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of her decision, May 4, 2006.  (R. at 41.)

10.     Plaintiff first argues that the ALJ's decision must be reversed because she failed to follow the Appeals Council's remand instructions.  On remand the Appeals Council directed the ALJ to (1) update the record with any available evidence from treating and/or examining sources; (2) seek clarification from the treating physician, Dr. Bax; (3) obtain a consultative orthopedic exam, if necessary to complete the record; (4) obtain expert medical evidence concerning the longitudinal assessment to assist in resolving any conflicts or inconsistencies in the evidence; (5) evaluate the claimant's symptoms and assess credibility; (6) weigh all opinion evidence; and (7) reassess and rationalize a maximum RFC.

Having reviewed the ALJ's decision in light of Plaintiff's arguments and the Appeals Council's remand order, this Court finds no error.  The ALJ adequately followed the Appeal's Council's instructions and discussed and assessed medical evidence supporting the determination that Plaintiff was not disabled.  The ALJ considered medical evidence from numerous doctors, including Drs. Gadallah, Bax, Swetz, Yu, Miller, and Gosy, along with the objective results of MRIs and X-rays.  (R. at 34-38.)  Contrary to Plaintiff's assertion, the ALJ updated the record from the earlier February 23, 2003 decision by considering the treatment notes and recommendations of Plaintiff's pain specialist, Dr. Gosy, and MRI results from 2005.  (R. at 36-38.)  As directed by the Appeals Council, the ALJ also sought clarification from Dr. Bax, but he did not respond to her requests for

clarification or to her inquiries concerning his assessment of Plaintiff's RFC.  (R. at 235-242.)

Also contrary to Plaintiff's assertion, the Appeals Council did not require the ALJ to obtain an orthopedic consultive exam concerning Plaintiff's RFC; such an exam was ordered only "if necessary."  (R. at 114.)  The ALJ's determination that a consultative orthopedic exam was not necessary is supported, because sufficient data was already present in the record to document the extent of Plaintiff's condition.  Along with the treatment notes from Plaintiff's numerous examining physicians, full knee X-rays from 1996 and 1999, and MRIs performed in 1997 and 2005, showed Plaintiff's knee to be within normal limits.  (R. at 34 - 38.)

Additionally, as per the Appeals Council's remand order, the ALJ evaluated Plaintiff's symptoms and assessed her credibility.  (R. at 32, 33, 37.)  The ALJ set forth Plaintiff's testimony and prior statements regarding her daily activities and reports of pain and assessed her credibility based on the correlation between Plaintiff's account and the objective evidence in the record.  (R. at 32-33, 37.)

Further, the ALJ reassessed and found as a minimum RFC that Plaintiff was capable of performing the full range of sedentary work.  (R. at 38.)  The ALJ's determination of Plaintiff's RFC is well supported by the medical evidence in the record and, in fact, is a more conservative estimate than that determined by two state agency physicians who determined that Plaintiff had the ability to perform light work.  (R. at 35.)

Finally, the Appeals Council itself had the opportunity to evaluate whether the ALJ properly complied with its remand instructions when the case returned to it on February 27, 2008.  At that time, the Appeals Council noted that it had reviewed the new evidence from

6

Dr. Bax dated May 19, 2005, through November 6, 2006, but nowhere did it find any error by the ALJ with regard to complying with its remand instructions.  (R. at 12-15.)

Based on the foregoing, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record and that the ALJ adequately followed the Appeals Council's remand instructions.

11.     Plaintiff's second challenge is that the ALJ failed to properly consider the opinion of her treating sources.  Plaintiff contends that the ALJ failed to properly apply the treating physician rule, because she failed to give special deference to Dr. Bax's opinion.

According to the "treating physician rule,"[3] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion, if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Bax's opinion in light of the objective medical findings in the record. Rather, the ALJ's decision reflects her extensive evaluation of all the medical evidence. (R. at 34-38.)

The ALJ afforded little weight to Dr. Bax's assessments because she found them both inconsistent with the record as a whole and internally inconsistent.  (R. at 38.)  Dr. Bax's notes indicate that Plaintiff has persistent symptoms including antalgic gait, decreased quadricep strength and tone, and positive apprehension sign.  (R at 269-284, 349-352, 400-432, 497-506.) His notes also reveal little improvement in Plaintiff's condition after surgery; Dr. Bax describes Plaintiff as totally disabled or unable to work in nearly every post-surgical note.  (Id.)  The ALJ noted, however, that Dr. Bax stated in November 1997 that Plaintiff was working at a sedentary job and could continue to work at that level of exertion.  (R. at 37.)  Additionally, the ALJ noted that Dr. Bax repeatedly prescribed exercise and ambulation and recommended vocational rehabilitation.  (R. at 38.)  Finally, Dr. Bax declined to specify his assessment of Plaintiff's RFC or respond to interrogatories sent to him by the ALJ.  (Id.)

It is well settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4).  In this Court's view, the ALJ did not err by finding that Dr. Bax's assessment is inconsistent with the findings of Dr. Gosy and the state agency physicians, and the objective evidence in the

record, which includes normal X-rays and normal MRIs on several occasions throughout the period from 1997 through 2005. (R at 34-37.) Dr. Swetz, a state agency physician who examined Plaintiff on February 24, 1999, for example, noted some point tenderness in Plaintiff's knee and extension to 90 degrees, but also noted that Plaintiff did not walk with an assistive device and the X-ray showed no abnormalities. (R. at 312-314.) Additionally, after one of his examinations, Dr. Gosy noted no swelling, discoloration, change in temperature or allodynia and recommended, pending the results of an MRI, that Plaintiff start training for a sedentary position. (R. at 479.) The results of that MRI showed no abnormalities. (R. at 36.)

Ultimately, the ALJ gave great weight to the findings of Plaintiff's treating pain specialist, Dr. Gosy, that Plaintiff can perform sedentary work. (R. at 38.) Dr. Gosy's finding was supported by objective clinical findings and the prescribed treatment. (Id.) In addition, the ALJ noted that two weeks after her work injury, Plaintiff was found with no objective evidence of an impairment. (R. at 37.) Finally, the ALJ also credited state agency physicians' examinations of Plaintiff performed in April 1999 and October 2000, which determined Plaintiff was capable of performing light work. (R. at 35.)

The ALJ's consideration of the assessments of state agency physicians was not, as Plaintiff suggests, inappropriate. It is well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2). Such reliance is particularly appropriate where, as here, the opinion of the state agency physician is supported by the record evidence, including the objective medical findings of Plaintiff's own

treating physicians.  In any event, the ALJ's more conservative final determination of Plaintiff's RFC was ultimately based on Dr. Gosy's assessment that Plaintiff was capable of sedentary work.  (R. at 38.)

Consequently, this Court finds that the ALJ afforded proper weight to the medical opinions contained in the record.    It is the ALJ's sole responsibility to weigh all of the medical evidence and resolve any material conflicts.  See Richardson, 402 U.S. at 399. Under the circumstances of this case, this Court finds that the ALJ's decision to afford less weight to Dr. Bax's generalized statements is supported by substantial evidence in the record.  Because Dr. Bax's conclusion that Plaintiff was totally disabled was inconsistent with his own recommendation of exercise and ambulation, and the objective findings in the record, the ALJ  was not required under the Commissioner's regulations to give it controlling weight.

12.    Plaintiff's third challenge to the ALJ's decision is that she improperly assessed Plaintiff's credibility.  Plaintiff contends that the inconsistencies in her testimony are easily explained by the length of time between the hearings and the progression of her symptoms.

The ALJ found that Plaintiff's testimony regarding her pain symptoms was out of proportion to the objective medical evidence and the nature and extent of the treatment she sought and received, as well as to the objective findings, which included several MRIs and X-rays.  (R. at 34, 36, 37.)  For example, the medical evidence showed no objective evidence of an impairment two weeks after the alleged injury.  (R. at 37.)  And despite Plaintiff's complaints of severe pain, she had only 30 tablets of naproxen in 2001, and no medication in 2002, until September when she was prescribed 30 tablets of ibuprofen.  (Id.)

Further, Plaintiff's assertions of the medications and dosage she was taking did not correspond to the records of medications that were actually dispensed.  (Id.)  Finally, Plaintiff claimed that she experiences sharp pain when she stands up or sits down, yet she testified that she is up and down every twenty minutes.  (Id.)  Based on the Plaintiff's testimony, and a comparison with the objective medical evidence in the record, the ALJ determined that Plaintiff's subjective complaints were not credible.  (R. at 38.)

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's exercise of discretion regarding Plaintiff's credibility in light of the objective medical findings.

13.     Plaintiff's final challenge to the ALJ's decision is that she improperly adjudicated the case at the fifth step of the evaluation detailed in 20 CFR §§ 404.1520 and 416.920 through her use of the Medical Vocational Guidelines ("the GRIDS"). Specifically, Plaintiff argues that a vocational expert should have been called to clarify the effect of limitations on the Plaintiff's vocational profile.

Generally, when a claimant's non-exertional impairments significantly diminish his or her ability to work, such that he or she is not able to perform the full range of employment indicated by the GRIDS, the Commissioner must introduce the testimony of a vocational expert, or other similar evidence, that jobs exist in the national economy that claimant can obtain and perform.  Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Where no additional restrictions exist, and the conclusion directed by the vocational tables would not be affected, the Commissioner need not introduce additional vocational evidence.  See Social Security Ruling ("SSR") 83-14.  Such was the case here.

The ALJ determined that Plaintiff retained the RFC to perform the full range of

sedentary work before turning to the GRIDS to make her determination that Plaintiff was "not disabled." Plaintiff did not allege, nor did the ALJ find, any non-exertional limitations that would affect the results directed by the vocational tables.  Accordingly, this Court finds that the ALJ was not required to enlist the aid of a vocational expert to establish that jobs exist in the national economy that Plaintiff could perform.

14.    Having reviewed the administrative record, this Court finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled.   The ALJ thoroughly developed and considered the record and afforded appropriate weight to all of the medical evidence in finding that Plaintiff is not disabled.    Finding no reversible error, this Court will grant Defendant's Motion for Judgment on the Pleadings.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:  July 22, 2011
          Buffalo, New York


/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court